## Rogers *versus* Bemus.

1. Rogers contracted to build a saw-mill on Bemus's land, Bemus to prepare the foundation at a specified time, and to furnish means for the erection. with other expenses, to stock the mill until the earnings should pay for stocking, Rogers to have half the profits. Rogers prepared the superstructure, &c. Bemus did not lay the foundation or furnish means, as stipulated, and Rogers was thereby delayed from operating the mill. *Held*, that evidence of what the mill would have rented for when finished was proper in measuring damages in an action by Rogers on the contract.

2. Probable profits from the manufacture of lumber, the mill being unfinished, would be too remote, contingent and speculative.

3. A party may resort to different means of estimating his damages, to be judged of by the jury.

October 19th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1870, No. 121.

Thomas Rogers, on the 26th of October 1865, brought an action of covenant against Daniel Bemus.

The covenants for the breach of which the action was brought are in the following agreement, "made this twenty-sixth day of April 1859, between Daniel Bemus, of the first part, and Thomas Rogers, of the second part: The said Bemus agrees to furnish a site, &c., for a saw-mill on his place in Mead township, and build the foundation for a saw-mill, and further to be at one-half of the expense of erecting the superstructure, &c., of a saw-mill upon said foundation, and to furnish all the money necessary to erect said mill, the same to be performed before the expiration of the year 1859, and said Bemus further agrees to furnish the means to stock and run the mill after the same is completed, and until the earnings of the same shall be sufficient to stock and run the same. And further, the said Bemus agrees to let and permit the said Rogers to occupy free of rent the large house and garden attached thereto, situate on said Bemus's premises, &c., and further, said Bemus agrees at any time that said Rogers may choose to sell his interest in said mill, to purchase the same, and pay said Rogers therefor the amount expended, &c. And the said party of the second part agrees to be at one-half the expense in erecting the superstructure of said mill, and to take charge of the construction of the same, and have it completed by the close of the year 1859, and further said Rogers agrees to take charge of the operating said mill, and be at one-half of the expense of the same, also one-half the expense of stocking the same. It is further agreed that after paying all costs and expenses incurred in erecting and operating the mill, that the net earnings of the same shall be divided equally between the parties. It being expressly understood that whenever

[Rogers v. Bemus.]

there are sales made, after deducting expenses, the proceeds are to be divided equally between the parties. Said Rogers further agrees on his part that at any time when he wishes to sell his interest in said mill, being one-half of the superstructure, &c., that he will sell the same to said Bemus for the amount expended, &c., by him in the erection of the same, less the wear and tear and natural decay. And further, said Rogers agrees to repay said Bemus for any money advanced or expenses incurred over and above one-half the cost of erecting said mill, as above mentioned, out of his, said Rogers's share of the first earnings of the same, with legal interest, after securing such an amount as may be necessary to support said Rogers and family."

The breaches assigned in the declaration were, that the defendant did not lay the foundation or furnish money for the erection of the mill, and did not furnish stock; and by reason thereof the mill could not be operated, and the plaintiffs lost the profits, &c.

The case was tried June 21st 1870, before Johnson, P. J.

Daniel Shunk testified, that he laid the foundation of the mill for the defendant, commenced in July 1860, and finished in July 1861; defendant was bad pay; witness was going to quit; plaintiff told him to go on, and he would pay, and did pay him three or four dollars. Defendant paid the rest.

Other witnesses testified that they had worked at the foundation, and had stopped because they were not paid.

There was evidence that the plaintiff, who was a carpenter and framed the mill, had the frame-work finished to raise in 1859, but the foundation was not completed till June 1861, when it was raised, and the mill was not in running order until 1862. The plaintiff cut and hauled the timber, sawed the boards, and furnished the shingles; also the hardware.

Plaintiff gave notice to defendant more than once to finish the foundation and to furnish money, but he refused; the plaintiff had not money to finish the erection.

The plaintiff offered to show the rental value of the mill from January 1860 until 1863 :—

1. By proving what it would have rented for.

2. What amount of lumber could have been manufactured by plaintiff during that time by the use of reasonable and ordinary diligence, the value of the lumber, cost of manufacturing, the market price at the place where it was to be manufactured: Also to show the amount of lumber the mill would have cut from January 1st 1860 until October 26th 1865, the value of the lumber that could have been sawed, and cost of running, to show the amount of damage sustained by plaintiff.

The offer was objected to by the defendant, rejected by the court, and a bill of exceptions was sealed.

19 P. F. SMITH—28

The court charged that the plaintiff was entitled to but nominal damages.

The verdict was for the plaintiff for 6 cents damages.

The plaintiff took a writ of error, and assigned for error the rejection of his offer of evidence and the instruction to the jury.

*D. M. Farrelly* (with whom were *H. L. Richmond & Son* and *J. A. McFadden*), for plaintiff in error.—Indirect and consequential damages are recoverable: 2 Bl. Com. 433; Forsyth *v.* Palmer, 2 Harris 96. Rental value has a certain measure: Dickey *v.* McCullough, 2 W. & S. 88; Spigelmoyer *v.* Walter, 3 Id. 540; Weaver *v.* Wood, 9 Barr 220; Lyon *v.* Miller, 12 Harris 392; Watson *v.* O'Hern, 6 Watts 362.

*P. Church* and *J. B. Brawley*, for defendant in error.—Specifying a day for performance does not of itself make time of the essence of a contract: Adams's Eq. 88. Profits are not to be estimated in the damages: Schooner Lively, 1 Gallison 314; Blanchard *v.* Ely, 21 Wend. 242; 1 Evans' Pothier 91; The Amiable Nancy, 3 Wheat. 546; Chapin *v.* Horton, 6 McLean 500; Freeman *v.* Clute, 3 Barb. 424; Thompson *v.* Shattuck, 2 Metc. 615; McKnight *v.* Ratcliff, 8 Wright 156.

The opinion of the court was delivered, January 9th 1872, by

AGNEW, J.—The assignments of error in this case raise but a single question, to wit, the proper measure of damages. The court below excluded all the plaintiff's offers on this subject, and finally instructed the jury that the plaintiff could recover only nominal damages. By his contract Bemus was bound to build the foundation for a saw-mill, and to furnish all the money necessary to erect the mill (of which one-half should be at his own expense), all before the expiration of the year 1859; and afterwards to furnish the means to stock and run the mill. Rogers was to take charge of the construction of the superstructure (of which he was to pay one-half of the expense), and complete the entire by the close of the year 1859, and afterwards to run and operate the mill. The parties were to be partners in running and operating the mill, and the expense of the erection of the superstructure and fitting it up and stocking it was to be paid first out of the earnings of the mill. The breaches of Bemus's covenant, as laid, were the failure to build the foundation in the time specified, and to furnish the money for building the superstructure, and afterward for stocking the mill. It was in clear proof that Rogers had the superstructure ready to put up in the year 1859, and that Bemus had not the foundation finished to receive it until the latter part of the year 1861, and also that Rogers gave Bemus several notices, one in writing in August 1859, to get the

[Rogers v. Bemus.]

foundation ready, and to furnish the money to put up the superstructure and make ready the mill for operation. Under these circumstances the plaintiff, having shown very clearly the breach of Bemus's covenant to build the foundation, and; furnish the money to erect the mill, then offered, as evidence of the damage, to prove what would have been a fair rental for the mill; and other facts which may be summed up as an offer to prove the net profits the mill would have made. We agree with the learned judge that the probable net profits of an unfinished water-saw-mill are too remote, contingent and speculative, to be the foundation of a verdict for damages. The business might be profitable or unprofitable, and would depend on so many contingencies of the seasons, stocking, water, manufacture, kinds of lumber and state of the market, the result would be the merest guess work. But this cannot be said of the fair rental such a mill would bring. The rental of the property is entirely distinct from the business to be done upon it. The owner can always rent it for something near its yearly value, and has nothing to do with the results of the business, which belongs to the tenant, who calculates his probability of profit or risk, when he rents. The breach of the covenants of Bemus in this case consists in the delay of performance, not in entire non-performance. The delay therefore was a matter directly within his view when he declined or neglected to perform; and the direct injury in consequence of the delay, was the loss of the use of the mill. This might be fairly measured by the rental such a mill would bring. It is no more uncertain than the standard of damages for the use and occupation of property, where the party has had the use of it. The mill here had itself to show for the thing to be used, so that an estimate of the value of its use was fairly within the range of competent evidence. With a fair rental value of the mill before them, it would have been competent for the jury, under proper instruction upon the contract, to ascertain how much of this measure for the delay belonged to Rogers, as evidence of the loss he sustained by the delay. The delay of Bemus being the direct result of his neglect or refusal to perform his covenant, the loss of the use of the property fell directly within his view also, and was a consequence therefore for which he must be held accountable to the extent of Rogers's proportion of the loss. See this subject discussed in Fleming v. Beck, 12 Wright 309, and Pittsburg Coal Co. v. Foster, 9 P. F. Smith 365.

We think the learned judge erred also in deciding that the plaintiff could recover only nominal damages. Though the chief elements of damages were not proved by the plaintiff, yet there were some in evidence, which would have redeemed the case from an instruction for nominal damages only. For instance, Rogers paid Daniel Shunk on account of building the foundation

from three to four dollars. He proved also that his trade was that of a carpenter, that he was delayed in the erection of the superstructure until October 1861, and consequently primâ facie at least lost his time, for which a jury might allow something at the rates of common labor, if not those of skilled work. The case was therefore not wholly barren of elements for a computation of some damage. There is no doubt that a party is not confined to a single mode of measuring or estimating his damages. Where the case admits of it, he may resort to different means of arriving at the result, and these must be judged of by the jury, with proper instructions if necessary to aid them in reaching the conclusion contemplated by the suit; to wit, the amount of loss sustained in consequence of the injury: Seely *v.* Alden, 11 P. F. Smith 302; Yeager *et al. v.* Weaver, 14 P. F. Smith 425.

For these reasons the judgment is reversed, and a *venire facias de novo* awarded.