# Erie and Pittsburgh Railroad Company *versus* Johnson.

1. A mistake of a judge in stating a date incorrectly in his instructions to the jury, the date being correctly stated in other parts of the charge, is not cause for reversal on writ of error.

2. Where a railroad company agrees to build and maintain a fence on both sides of their right of way through a certain farm, after having built it, the measure of damages for the breach of the remainder of their contract, is the annual cost of keeping and maintaining the fence.

November 28th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the court of Common Pleas of *Mercer county :* Of January Term 1882, No. 446.

This was an action on the case brought by William F. Johnson against the Erie and Pittsburgh Railroad Company to recover damages for the non-fulfillment of an alleged contract

made with him by the defendants to maintain fences along that portion of their road running through plaintiff's farm.

On the trial, before McDermitt, P. J., the following facts appeared: In 1856 the Erie and North Eastern Railroad Company was incorporated, and under its Act of incorporation proceeded to complete the construction of a railroad, between certain points, which had been commenced by a previously existing company. This road passed through the plaintiff's farm in Crawford county, and upon his failure to agree with the company as to the amount of damage sustained by him in consequence thereof, viewers were appointed by the court, who on February 20th 1857 awarded him $178 damages. To this award no exceptions were filed, and it was duly confirmed by the court and the money paid to plaintiff.

The Erie and Pittsburgh Railroad Company, defendants, were incorporated by the Act of April 1st 1858 (P. L. 511) which authorized the transfer to them of the right of way of the Erie and North Eastern R. R. Co. and provided that payment for the same should be made in stock of the former company.

The plaintiff claimed that subsequent to the proceedings for the assessment of damages, sustained by him, there was a verbal agreement between him and the officers of the defendant company, that the company would build and maintain fences along the line of their road, through his property, and that they kept their agreement from the building of the road in 1859 or 1860 until 1877, at which time they refused to continue it.

The defendants, on the other hand, claimed that the agreement was not made with them, but with the Erie and North Eastern R. R. Co. in 1857 before the granting of defendants' charter, and that therefore they were not bound by it.

Plaintiff offered evidence to show the difference in the market value of his farm, with the covenant on the part of the railroad company performed, and with it not performed. Objected to. Objection overruled. Exception. (Second assignment of error.)

Plaintiff requested the court to instruct the jury that the proper measure of damages, for failure of the company to perform the contract, was as stated in the above offer.

Answer. "Upon a breach of the contract of defendant to keep and maintain a good and substantial fence on both sides of the line of its road through plaintiff's farm, the measure of damages for such breach is what it would cost to build, keep and maintain perpetually a good, substantial fence on both sides of defendants' railroad through plaintiff's farm, a length of about 280 rods, if you believe the evidence on that point. In arriving at such measure, it would be a safe rule to capitalize the annual expense; that is to say, what gross sum would produce annually the amount it would cost annually to maintain and

[Erie, &c. R. R. Co. v. Johnson.]

keep in repair the fence in question. The difference in the market value of plaintiff's whole farm of 218 acres, with the alleged contract enforced, and with it abrogated, is not the measure of damages for the breach of this alleged contract."

The court further charged the jury, inter alia, as follows:

"It is important that you, in the investigation of this case, should endeavor to fix the date, as nearly as possible, of the alleged agreement, as testified to by Dr. Gibson, whose deposition was read in your hearing, and by the plaintiff and William McArthur, the only witnesses upon the part of the plaintiff who testify to the agreement. It is quite important that you should fix this date, for the reason that this suit was brought against the Erie and Pittsburgh Railroad Company, and the Erie and Pittsburgh Railroad Company was not incorporated until by an Act of Assembly approved April 1st 1858. How long after the passage of this Act the Railroad Company actually was incorporated—that is, the stock subscribed, directors elected, and the preliminary proceedings gone through to make it a living corporation—we do not know. . . . . I have given you a detailed statement of these transactions for the purpose of calling your attention to the fact that it is of a great deal of importance whether the agreement testified to by Johnson, Gibson and McArthur was in 1857 or 1858, instructing you that if it was in 1857 these defendants are not bound by the alleged promise. . . . . [Thus much for the purpose of calling your attention to what is an important element in this case; that is, whether the contract was made in 1857 or 1858. If it was made in 1857 it must have been made by some other corporation than the Erie and Pittsburgh Railroad Company. If it was made 1857 and they were making a line for themselves, then it must have been made (if we take the evidence on the part of the plaintiff to be correct) with the directors for the present company.]" (First assignment of error.)

Verdict for plaintiff in the sum of $2,000 and judgment thereon. Thereupon defendants took this writ of error, assigning for error the admission of the evidence as above, and that portion of the charge above quoted within brackets.

*J. Ross Thompson*, for plaintiff in error.—The testimony fixes the contract for maintaining fences, in 1857, between January 21st, when the viewers were appointed, and February 27th, the date of filing their report. Hence the court erred materially in the general charge—as assigned for error—as to the time when the contract was made, the Erie & Pittsburgh Railroad Company having no existence in 1857, but being created a year later, viz., in April 1858.

The jury were led into assessing the damages at the outside

figure by the admission of the evidence as to the difference in the market value of the plaintiff's farm, with the alleged contract performed, or with it abrogated.   The proper basis for estimating the damage, was not the relative values of the land, but the cost of building and maintaining the fence.

*J. B. Brawley*, for defendant in error.—So much of the charge of the court as is contained in the first assignment of error, is incorrectly published in the paper book of the plaintiff in error.   It should read : "If it, the contract, was made in 1857, it must have been made by some other corporation than the Erie & Pittsburgh Railroad Company.   If it was made in 1858 and they were making a line for themselves, then it must have been made (if we take the evidence on the part of the plaintiff to be correct) with the directors of the present company."   The certified copy of the charge of the court in the record of the case will show that the above is correct.

The court was in doubt as to the measure of damages and reserved the right to charge the jury, and in pursuance of this reservation instructed them that the proper measure of damages was a capital sum, the interest on which would amount to the annual cost of keeping the fence in good repair ; this was the measure contended for by the plaintiff in error and the jury found a verdict accordingly.   There can be no doubt that this ruling was favorable to the plaintiff in error : Watterson *v.* Allegheny Valley Railroad Company, 24 Smith 208 ; Erie & Pittsburg Railroad Company *v.* Douthet, 7 Norris 243.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1883.

We cannot see that the plaintiff in error has much if any reason to complain of the charge or rulings of the learned judge of the court below.   The first assignment is founded upon a mistake, perhaps of the stenographer, or if made by the judge, was a mere *lapsus linguæ* which could not have misled the jury.   The attention of that body had previously been called to the fact that the Erie & Pittsburgh Railroad Company was not incorporated until the 1st of April 1858, and that its organization must necessarily have occurred after that time.   It was also instructed that if the alleged contract was made in 1857, the defendants were not bound by it.   Moreover in the preceding sentence, and immediately connected with that part of the charge which forms the subject of the exception under discussion, the learned judge again tells the jury, that the question whether the contract was made in 1857 or 1858 was an important element in the case, for if made in 1857 it must have been made with some other corporation than the Erie & Pittsburgh Company.   How then could he say in the succeeding sentence,

[Erie, &c. R. R. Co. *v.* Johnson.]

unless by a mere slip of the tongue, which could harm no one, "if it was made in 1857, and they were making a line for themselves," then it, the contract, "must have been made, if we take the evidence on the part of the plaintiff to be correct, with the directors of the present company."

But how could a slip of this kind injure the defendant, when the jury knew that it had no existence in 1857, and were most positively instructed, and the instruction repeated, that if that were the year of the contract the Erie and Pittsburgh Company could not be bound by it? For an error so harmless and insignificant we cannot agree to reverse a case otherwise well and fairly ruled and submitted to the jury.

The only other assignment which we think worthy of notice is that which excepts to the judge's ruling on the admission of evidence to prove the damages resulting from a breach of the contract. The value of this farm with the performance of the contract, as compared with its value without such performance, was certainly not a proper measure for the damages suffered by the plaintiff, and this will become obvious if we reflect that such a rule must contract or expand according to the value of, or the number of acres contained in, the farm, when, in fact, we are dealing alone with the value and quantity of the fence. Whether the land was good or bad, or whether the farm was great or small, the question, and the only question, was, what would be the cost of the maintenance perpetually of two hundred and eighty rods of fence? But we cannot say that this error did the defendant any harm, and this for two reasons; First, the difference in the value of the farm under the contract and without it, would simply be the value of the fence, and on no other ground could the witnesses have put their estimates. Second, the court corrected its own error by instructing the jury that, in assessing the damages, they must confine themselves to the annual cost of keeping and maintaining the fence in good repair. It seems to us very clear that the mere admission of evidence relating to the value of the land could do the defendant no harm. In many cases the admission of irrelevant testimony, even though afterwards ruled out, may do a serious injury, for it may be so interwoven with the case that it may be impossible to say how it affected the minds of the jury. But such is not the present case; two distinct methods of ascertaining the plaintiff's damages are submitted to the court; the one the value of the land, the other the cost of fencing, and the jury are instructed that they are to be confined to the latter method. Such being the case, we cannot see how evidence of the value of the land could, in the least degree, affect the verdict.

The judgment is affirmed.