John Wood *v.* Anna P. Sharpless, Appellant.

*Landlord and tenant—Covenant in lease—Repairs—Damages.*

In an action for the breach of a covenant in a lease, evidence of the value of the lease is not admissible, because such value is not the measure of the damages for the breach of a particular covenant in it.

A tenant after having been in possession of certain premises for seven years signed a new lease by which he agreed "to keep the fences in proper repair, the material for which to be furnished by the lessor." The landlord did not furnish any material, and the tenant did not repair the fences. *Held*, (1) that the covenant to keep the fences in repair was absolute and not qualified by the words "the material for which to be furnished

by the lessor;" (2) that the tenant was at liberty, and it was his duty, to use such suitable material as was on the premises to repair the fences, and if the landlord failed to furnish material when requested he could purchase it, and deduct the price from his rent; (3) that the tenant was not entitled directly or indirectly to any abatement from the rent, based on the nonperformance of his own covenant.

Argued Feb. 10, 1896. Appeals, Nos. 355, 356 and 357, Jan. T., 1895, by defendant, from judgments of C. P. Delaware Co., Sept. T., 1893, No. 75, Dec. T., 1893, No. 72, and March T., 1894, No. 87, on verdict for plaintiff. Before WILLIAMS, Mc-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Replevin to recover goods distrained for rent.

The annual rent was $300, payable quarterly. The rent due July 1, 1893, was distrained for and the property replevied. Similar action was had for the rent due October 1, 1893, and January 1, 1894. The issue in these three several suits in replevin was made upon the tenant's plea of no rent in arrear. The three issues were tried together.

The facts appear by the charge of the court below and the opinion of the Supreme Court. CLAYTON, P. J., charged as follows:

The great question you have to decide will be how much rent is due the landlord under this lease. The lease has been given in evidence and you have heard what the defense is. According to the terms of the lease, some $375 are due; that is to say, that if you find that the landlord has kept his covenant, then you will find there is $375 due for rent, and you will find the value of the property distrained, and that will be the valuation put upon it by the tenant himself when he gave his bond. [The defense set up to the landlord's claim is, that by the terms of the lease, the fences are to be kept in good ordinary repair; you will know what a good ordinary fence is; one that is sufficient to restrain cattle, the usual kind, the unbreachy; no one is bound to keep up fences against breachy cattle. The fence ought to be sufficient to restrain ordinary cattle; that is the kind of fence a farmer requires. One that will protect his crops from trespass committed by other cattle, and that will sufficiently confine his own stock. The fence law of Pennsylvania is in some confusion, and it is sufficient for me to say to you that

that kind of a fence, at least under this lease, is required; under
the lease offered in evidence here, the kind of fence that should
be kept up on that property is one that would restrain ordinary
cattle. The duty of maintaining this fence, by the lease is specif-
ically set out,—the fences are to be reasonably good; the land-
lord is to furnish material, and the tenant is to perform the labor
of putting up the fences; that is the pinch of the case.] [1]
You will have to decide which of these two parties are in de-
fault. [If you find that the tenant performed his part, was
always willing to put up the fences, gave notice to the landlord,
requested the materials to be furnished, then it was the land-
lord's duty to furnish the necessary materials, and if he failed to
do it, or if she failed to do it,—it appears that the landlord in
this case is a lady,—if the landlord failed to furnish the necessary
material, having notice that they were necessary, and that they
were wanted, then I instruct you that the tenant is entitled to set
off against the landlord's claim of rent whatever damages he has
sustained, and the damages are to be measured by taking the ren-
tal value of the property, with good ordinary fences, and its ren-
tal value in the condition it was then in, and I instruct you that
the rental value is settled between the parties. The rental value
of this property between the parties is $300 a year in good condi-
tion, so you need give yourselves no concern about finding out
what the property was worth. It was worth $300; the parties
have settled that by their own papers. It was worth $300 with
good ordinary fences; in addition to this $300, it was worth the
labor necessary to plant these fences.] [2] [Now, you will
observe, that the lease is but for one year, and can be termin-
ated at the end of any year. It would therefore be unreasona-
ble to ask this tenant, at his own expense, to put up fences that
should enure to some other tenant after the expiration of his
lease.] [3] This, I suppose, is the reason why the parties stip-
ulated that they should be mutually liable to do certain things;
that is to say, the tenant would not wish to expend unnecessary
labor to put up first-class fences only for a year, and the land-
lord would not be willing to expend a large amount of money
putting up any fences that were unnecessary, because his land
is in the proximity of the built-up parts of the city of Chester.
and you will notice by the terms of the agreement that the land-
lord has the right to sell off lots, and the probabilities are that

the lots will not be used for farming purposes for years, and there is an agreement, gentlemen, and an agreement made by the parties is the law between the parties. There is nothing unreasonable or unlawful in the agreement. [The agreement is that the farm shall be kept up in good repair; the fences shall be kept in good repair; and all material necessary for that purpose shall be furnished by the landlord, and all the work necessary for planting and building the fences shall be done by the tenant.] [4] Now the landlord alleges that he was always willing to furnish the material. The defendant denies it, and the principal point of the case, and the one which I suppose will give you more trouble than any other point in the case, is the truth of these two allegations. Mr. Lyons admits that he refused to have anything to do with that and that whenever notice was given to him, or complaints were given to him, he referred Mr. Wood to Mr. Elkinton. [Mr. Wood says that he repeatedly requested Mr. Elkinton to furnish material; Mr. Elkinton says he required a list of the material, which was never furnished him, and that is the dispute between them.] [5] Now you have all the evidence upon that subject.

You have the testimony of the witnesses. [The strongest testimony in the case is that of the son of the defendant, who is absent, but whose affidavit was read, and which is to have the same effect as if he were on the stand and testified to what he has set forth. This is denied by the other side. They take the stand and say what is said there is not true, and the tenant produces a letter from Mr. Elkinton. That letter will be for you, which would seem to a certain extent to corroborate the tenant, in which he says, "Respected Friend: Thy favor of the 15th is at hand. As far as the cutting off and opening up of the land is concerned there has been nothing done outside of our mutual understanding and acquiescence. This we all settled too long ago to take up now. On the other hand thy fulfillment of the contract made with me regarding keeping up the fences has been very unsatisfactory to me, consequently I do not see my way to make the appointment." Now that would seem to indicate that the tenant had requested an interview and that Mr. Elkinton had refused it because something that had gone before was not satisfactory.] [6] [Now you will have to wrestle with the difficulties between these parties, and the ques-

tion for you will be whether the landlord here has performed his part of the contract, or whether he has been excused from performing it because of the conduct of the tenant.] [7]   If what Mr. Elkinton and Mr. Lyons say is true, then it would seem that the fault was with the tenant.   They say that all they requested was an estimate of the materials wanting and that that estimate never came.   The tenant says that they refused to talk with him about it; that they refused to allow him for what he had done; that the $10.00 that they had agreed to pay him was never paid, and that there was a difference between them about the expense of putting up the fence around the house, and that they would not allow him for the materials he had furnished; upon the other hand it appears that Bunting's bills were paid and that there was an allowance made on work as well as material in putting up the fence around the house. So, gentlemen, the parties differ, and the very object of the jury is to settle the differences between the parties, who are witnesses here.   If you shall come to the conclusion that these fences were permitted to get out of repair and remain out of repair so that the tenant could not restrain his stock, and could not reasonably use the land for the purposes for which it was rented, and that the fault was with the landlord, and not with the tenant, then you may allow the tenant damages, and the damages, the measure of damages, will be the difference in the value of the land with and without the fences.   The value of the land with the fences in good repair was $300, and the labor of the tenant necessary to put up the fences; that was the value of the land with the fences in ordinary repair.   What was it worth for the purpose for which it was rented, without the fences being out of repair?   That is a question you will have to decide if you find the fault was with the landlord.   If you find the fault was with the tenant, then the landlord is entitled to the whole of it.   If you find therefore for the tenant, you will find the difference in the value of the property as rented between $300 a year and the necessary labor of putting up the fences, and what it was really worth for the purposes for which it was rented with the fences out of repair, and that difference you will deduct from the rent now claimed.   If, upon the other hand, you find the fault was with the tenant, then the landlord would be entitled to his whole rent, and, as I before

stated, you need not bother yourselves dividing up what you find between these three suits; just inform us whether you find for the landlord or the tenant, and if you find for the landlord, how much you find is due him for rent, making the proper deduction if you find the landlord was in fault in not furnishing the materials for fences; then we will mould your verdict.

I do not see that I can say anything further to you. I will leave the question of fact entirely for you. You are the judges of the testimony and you will decide the questions according to the weight of the testimony.

It is agreed, if you find for the landlord, that you find a certain sum due for rent. You will find the value of the goods distrained to be $400. [So, gentlemen, you have just a simple question, whether there was or was not a breach of this contract on the part of the landlord. It all relates to the fencing. Just keep your minds upon that one point and your verdict will be right.] [8] You do not find any interest; just find the amount of rent due. That is a question to be settled hereafter.

Verdict and judgment for plaintiff for $100 in the first case, $25.00 in the second case and $25.00 in the third case. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*W. B. Broomall*, for appellant.—In the absence of an express agreement there is no implied obligation on the landlord to repair demised premises, nor does he impliedly undertake that they are fit for the purposes for which they are rented, that they are tenantable or shall continue so: Moore v. Weber, 71 Pa. 429.

The value of the lease or any part of it is not the measure of damages to which the plaintiff is entitled for a breach of a particular covenant contained in it: Penn Iron Co. v. Diller, 113 Pa. 635; Woods' Mayne on Damages, 321.

*Joseph H. Hinkson*, for appellee.—Proper instructions were given as to the measure of damages: Fairman v. Fluck, 5 Watts, 516; Warner v. Caulk, 3 Wharton, 192; Phillips v, Monges, 4 Wharton, 225.

OPINION BY MR. JUSTICE McCOLLUM, in No. 355, April 6, 1896 :

Anna P. Sharpless, the defendant in this case, leased a small farm in Delaware county to John Wood, the plaintiff in the case, for one year from the first of April, 1892. The rent reserved was three hundred dollars, payable quarterly. The plaintiff occupied the farm under this lease two years, and during that time paid only two quarters' rent. The defendant distrained the plaintiff's goods for three quarters' rent in July, 1893, for one quarters' rent in October following, and for another quarters' rent in January, 1894. The plaintiff promptly followed each distress with a writ of replevin for the goods distrained and the result was that there were three actions pending between the parties, in each of which the single question presented was whether there was any rent due from the plaintiff to the defendant. The cases were tried together in the court below and the jury were instructed to find whether there was any rent due to the defendant, and if so, to state the amount of it. The jury found " for the defendant, rent in arrear $150," and this finding appears to have been recorded in each case. Judgment was entered on the verdict for $100 in the first suit, and for $25.00 in each of the other suits. From these judgments appeals were taken by the defendant. Her contention is that the court below erred in construing the provision in the lease relating to the fences, and in the instruction in regard to the measure of damages in case it was found that she failed to furnish material for the repair of the same.

The provision in the lease to which reference has been made is as follows : " The said John Wood also agrees . . . . to keep the fences in proper repair, the material for which to be furnished by the lessor." The learned court below construed this provision as containing a covenant by the defendant on the performance of which the plaintiff's covenant to keep the fences in proper repair depended, and instructed the jury in effect that if there was a breach of the defendant's covenant to furnish material the plaintiff might deduct from the rent the difference between the rental value of the property with the covenants performed and the rental value of it with the covenants disregarded. It will be noticed that the provision in question did not require the plaintiff to build new fences on the farm, nor

the defendant to furnish material for them, but that it related to the maintenance and proper repair of the fences then upon it. No person was better acquainted with the location and condition of these fences than the plaintiff because he was in possession of the premises as a tenant of the defendant for seven years immediately preceding the execution of the lease of April 20, 1892, and much of the dilapidation of which he complains must have been developed during that time.

In construing the fence clause regard must be had to the circumstances surrounding the transaction between the parties, and their purpose in inserting it in their contract. They wanted and were mutually interested in having the fences kept in proper repair. The plaintiff's covenant to keep them so was express, and if it was not qualified or made conditional by the words " the material for which to be furnished by the lessor" it was independent and absolute. It was not in terms dependent upon the defendant's covenant to furnish material. If the plaintiff had furnished the material and the defendant had paid for it, her covenant would have been satisfied, and if she had refused to furnish the material he might have furnished it, and deducted the cost from her claim for rent. What then was the proper measure of damages for the breach of the defendant's implied covenant to furnish the material? Clearly not that which was given to the jury in this case. It was not enlarged by the plaintiff's inaction in the premises, for the law would not reward him for that. He could not have more than he would have been entitled to if he had performed both covenants, and that would have been the cost of supplying the material it was the duty of the defendant to provide.

A railroad company agreed to build and maintain a fence on each side of its right of way through a farm. It built the fences but neglected to maintain them. The owner of the farm brought an action against the company to recover damages for the breach of its agreement to maintain the fences. It was held that the value of the farm with the performance of the contract, as compared with its value without such performance, was not a proper measure of the damages suffered by the plaintiff, but that the cost of maintaining the fences furnished the true measure: Erie & Pittsburg Railroad Co. v. Johnson, 101 Pa. 555.

In an action for the breach of a covenant in a lease it was held that evidence of the value of the lease was not admissible, because such value was not the measure of the damages for the breach of a particular covenant in it: Penn Iron Co., Limited, v. Diller, 113 Pa. 635.

In Loker v. Damon, 17 Pickering, 284, the plaintiff claimed damages for the destruction of ten rods of his fence. The fence was destroyed in November, 1832, and he built another in its place in May, 1833. He claimed that in consequence of the destruction of the fence his own and his neighbors' cattle entered his close and destroyed his grass. It was held in an opinion by Chief Justice SHAW that the measure of damages was the cost of replacing the fence. The view taken of the case was that while the act complained of was tortious, it was the duty of the plaintiff on discovering it to replace the fence within a reasonable time, and that for injuries to his property in consequence of his neglect to do so the original wrongdoer was not liable.

In this case the plaintiff was in possession of the demised premises for two years from April, 1892, and although he claims that at the commencement of his term the fences were in such a state of dilapidation that they were insufficient to restrain his cattle, it does not appear that during that time he made any vigorous effort to put them in condition to do so. He was at liberty and it was his duty under the lease to use in the repair of the fences such material on the demised premises as was suitable and could be properly employed for that purpose. If there was not enough of such material on the premises to put and keep the fences in proper repair he should have requested the defendant to supply the deficiency, and on her neglect or refusal to do so he might have furnished it at her expense. For the labor and money expended in doing what it was her duty to do he would have been entitled to a deduction from the rent, and as this accrued and was payable quarterly he had in his hands the means for prompt reimbursement. Under the circumstances of the case he cannot have, directly or indirectly, any abatement from the rent, based on the nonperformance of his own covenant.

In our view of the case the only material error committed by the learned court below lies in the instruction to the jury in

regard to the measure of damages, and for this we are constrained to reverse the judgment.

Judgment reversed and venire facias de novo awarded.

### WOOD v. SHARPLESS, NO. 356, Jan. T., 1895.

OPINION BY MR. JUSTICE McCOLLUM, April 6, 1896 :

For the reasons stated in the opinion just filed in No. 355, January term, 1895, supra, this judgment is reversed and a venire facias de novo is awarded.

### WOOD v. SHARPLESS, NO. 357, Jan. T., 1895.

OPINION BY MR. JUSTICE McCOLLUM, April 6, 1896 :

For the reasons stated in No. 355, January term, 1895, just decided, supra, the judgment in this case is reversed and a venire facias de novo is awarded.