Leon Gabai, Inc., Appellant, *v.* Krakovitz.

Argued October 10, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAW-
THROP, CUNNINGHAM and BALDRIGE, JJ.

*Bernard A. Illoway,* for appellant.—The landlord
who convenants to repair may be held liable for in-
jury resulting to lessee's goods through his failure to

make repair: Ehinger v. Bahl, 208 Pa. 250; Hart v. Coleman, 201 Alabama 345, 78 S 201, LRA 1918E, 213.

*Sylvan H. Hirsch,* of *Sundheim, Folz & Sundheim,* for appellee.—The value of tenant's goods injured through failure of lessor to repair is not the proper measure of damages: Weidner v. Roeper, 25 District Report 876; Kennedy, Jr. v. Loose-Wiles Co., 94 Pa. Superior Ct. 602; Bodine v. Wayne Title and Trust Company, 33 Pa. Superior Ct. 68; Loughlin v. Carey, 21 Pa. Superior Ct. 477.

OPINION BY KELLER, J., January 29, 1930:

We are of one mind in holding that the judgment entered in favor of the defendant in the court below must be reversed, because it was not warranted by the Practice Act of 1915, P. L. 483.

The action was brought by a tenant against its landlord to recover the damages sustained by reason of the failure of the landlord to repair the roof of the demised building upon notice from the tenant, as covenanted in the lease. The sum claimed in the plaintiff's statement represented the damages to its stock of merchandise resulting directly from defendant's failure to repair the roof after he had received notice of its leaky condition, had promised to attend to it, and had notified plaintiff not to make the repairs itself, and deduct the cost from the rent.

The defendant filed an affidavit of defense in lieu of a demurrer, asking judgment in his favor on the ground that under the provisions of the lease the plaintiff could not recover for the damage done to his merchandise because of the defendant's breach of his covenant to repair the roof; that the legal measure of damages was the sum necessary to make the repairs.

The learned court below, after stating its opinion that the statement of claim did not set forth any dam-

ages which the plaintiff was entitled to recover, and that the plaintiff had refused to amend its statement of claim in this respect, entered judgment for the defendant.

The Supreme Court ruled directly on this point in Long v. McAllister, 275 Pa. 34, where in an action of deceit the plaintiff's statement of claim set out a good cause of action but his averments as to damages were held to be faulty. In such case, the Supreme Court held that the defendant's proper course under the Practice Act was not to file an affidavit of defense in lieu of a demurrer, raising a question of law as to plaintiff's right of action, but to move the court to strike off the plaintiff's statement, or rule him to file a more specific statement, according as the circumstances warranted, and if the court found the damages to be improperly or insufficiently claimed and the plaintiff refused to amend, a *non pros* would then be entered. See also, Rhodes v. Terheyden, 272 Pa. 397, 401. The plaintiff's right of action should not be finally concluded by a judgment in favor of the defendant, because of a faulty averment of damage.

But a majority of the court are also of opinion that under the facts averred in the plaintiff's statement the damages were properly laid.

The lease was for the term of five years covering the building, 229-231 South Fifth Street, Philadelphia. It was on a printed form furnished by defendant's agents, and contained *thirty printed* paragraphs or clauses. Following these there were inserted in the blank space left for the purpose *ten typewritten* covenants or agreements. These were special covenants, some of which modified, or even abrogated, prior printed clauses relating to the same matters. They provided, inter alia, for allowances or deductions from the stated rent payable by lessee, during the first three years of the term; covenants by the lessor that he would make

certain changes and improvements and would put the electric elevator and the plumbing and heating plant in good working order and repair; giving lessee authority to erect signs on the building advertising his own business, and to sublet the demised premises; and *tenthly,* "Section 40. Notwithstanding anything herein contained to the contrary, Lessor upon proper notice from Lessee will repair the roof, pavement, and/or curb in front of the herein demised premises. Said notice shall be given by registered mail addressed to Lessor at 1422-24 S. Penn Square, Philadelphia, or at such other address as Lessor may require."

It is well settled that where the written and printed portions of a contract are repugnant to each other, the printed form must yield to the written terms, deliberately chosen to express the intention of the parties in the particular case: Grandin v. Ins. Co., 107 Pa. 26, 36. The rule applies to leases: Duffield v. Hue, 129 Pa. 94, 108; Wilcox v. Montour Iron & Steel Co., 147 Pa. 540, 544. See also: Dick v. Ireland, 130 Pa. 299, 316; Lane v. Nelson, 167 Pa. 602, 606; Heller's Est., 6 Pa. Superior Ct. 268, 272. It is also an established principle of construction, that in case of doubt or uncertainty as to the meaning of language used in a lease, its provisions will be construed most strongly against the lessor and in favor of the lessee: McClintock & Irvine Co. v. Aetna Explosives Co., 260 Pa. 191; Stetler v. N. B. Transit Co., 258 Pa. 299.

The learned president judge of the court below, in the opinion filed, cited the following extracts from the annotations in 28 A. L. R., following the case of Stevens v. Pratt, p. 1445, which accurately state the general law on the measure of damages in case of the landlord's breach of a covenant to repair. "In assessing the damages to a lessee for breach by the lessor of his covenant to repair, the rule to be applied is very largely to be determined from the circumstances

in the particular case. Compensation for financial injuries suffered by the lessee as a direct and proximate result of the defect due to the breach by the lessor of his covenant to repair is the intendment of the law. To attain this result, recourse must be had to different rules for assessing the damages. This necessarily results in more or less confusion in, and some conflict among, the cases, which, however, may frequently be reconciled by referring to the circumstances of the particular case." (page 1494) ...... "The most usual rule for assessing the tenant's damages for breach of the landlord's covenant to repair, *where no special damages are sustained,* is the difference between the rental value of the premises if kept in the condition or repair required by the landlord's covenant, and the rental value in the condition in which they actually are." (page 1495) ...... "If the tenant has the right to make the repairs after the lessor has breached his covenant, and does make them, he is entitled to recover, as damages for the breach, the expense of making the repairs." (page 1501) ...... "It frequently happens that as a result of the breach by the landlord of his covenant to repair, the property of the lessee is injured. Whether or not the damage recovered may include compensation for such loss must necessarily depend upon the circumstances of the particular case, such as the purpose for which the premises were leased, the nature of the defect, and the character of the property. Generally the injured party must make reasonable effort or use reasonable care to reduce the extent of the injury. But the circumstances may be such as to entitle the lessee to recover compensation for injury to his property resulting from a defect in the leased premises due to a breach by the landlord of his covenant to repair." (page 1505). He further said: "The Pennsylvania cases indicate that these same rules apply in our own State. There are some

cases where the measure of damage was held to be the difference in rental value, others in which it was held to be the actual expense of making the repairs, and at least one case which allowed a recovery of damage to the lessee's property.''

Cases in which the measure was the difference in the rental value were generally instances where the landlord had covenanted to make certain changes and improvements, tending to increase the value of the premises, and failed to do so, without other damage to the tenant, such as Rogers v. Bemus, 69 Pa. 432; Prescott v. Otterstatter, 79 Pa. 462; (But see same case on retrial, 85 Pa. 534, 537); Oliver v. Bredl, 25 Pa. Superior Ct. 653; Gorman v. Miller, 27 Pa. Superior Ct. 62.

Where the tenant has the right to make the repairs and does make them on the failure of the landlord to do so, without sustaining other damage, the measure of recovery is the expense of making the repairs. See Block v. Dowling, 20 Pa. C. C. Rep. 489 (ENDLICH, J.); Wood v. Sharpless, 174 Pa. 588; Erie R. R. Co. v. Johnson, 101 Pa. 555.

Two of the decisions cited by appellee, Kennedy v. Loose-Wiles Co., 94 Pa. Superior Ct. 602 and Laughlin v. Carey, 21 Pa. Superior Ct. 477, were cases where the *tenant* failed to leave the leased premises in good repair, as he had covenanted to do, and the measure of damages accruing to the *landlord* was held to be the cost of repairing the injury plus the rental value of the building during the period occupied in making repairs.

Ehinger v. Bahl, 208 Pa. 250, was the case referred to by the learned judge where a recovery was allowed for the damage done the tenant's property by the breach of the landlord's covenant or agreement to repair. The facts in that case are very similar to this one, though not so strong, for in it there was no written

covenant to repair, but only a verbal promise, made during the tenancy, which the landlord failed to perform, and the consideration for the promise was questioned, (See Torrey v. Adams, 43 A. L. R. 1447, 1456, 1470, 1495), which does not arise here. In Ehinger v. Bahl the tenant was in possession under a parol lease from month to month. A serious crack developed in the wall of the building which the tenant called to the landlord's notice, stating that he would move out if it was not immediately repaired. The landlord promised to make the repairs at once, but failed to do so. A few days later the building fell and injured the tenant's stock of goods and furniture. It was held that the tenant had a right of action against the landlord and that the measure of damages was his loss consequent on the landlord's failure to make the repairs. We think the same rule applies in the present case.

Plaintiff's amended statement sets up the specific covenant of the defendant to repair the roof of the demised building upon notice from the lessee, as contained in the 40th clause of the lease above quoted. It avers that on August 18, 1927, it gave the defendant written notice, as provided in the lease, that the roof was in a leaking condition and called on him to fix the same, stating that unless it was attended to at once plaintiff would be forced to call in some one to make the repairs and deduct the cost from the next month's rent payment. The letter also complained of leaky pipes in the basement. To this defendant's agent replied the next day: ''Wish to acknowledge receipt of your letter August 18th, relative to roof at the above address. Wish to say this is the first notice we have received relative to this condition, and same is being given our attention. With regard to the pipes in your building, regret to say this is a matter you must give your attention. No deductions will be allowed from your rent for any reason whatever.''

This was a distinct recognition of defendant's liability to repair the roof, a promise to attend to it at once, and a notice that under the terms of the lease the repairs were to be made by the defendant, as landlord, and not by the tenant, and that no allowance would be made the latter for any repairs made by it to the roof,—equivalent to a warning to the tenant not to make them itself if it looked for reimbursement.

The statement also avers that on several occasions, the defendant by his authorized agent, who made the lease, verbally promised plaintiff to repair the roof and put the same in good condition; and that relying on these representations made in response to said notice and complaint, plaintiff did not itself make the needed repairs or vacate the building. That defendant wholly failed to repair the roof, following which on December 3, 4 and 5 great quantities of water came through said leaky roof into the demised building injuring and destroying plaintiff's stock of merchandise, to its damage in the amount of $1,778.77.

It will be seen that there were here present not only the promises to repair, made in Ehinger v. Bahl, which were relied upon by the tenant, but also what amounted to notice or warning from the landlord that the tenant should not itself attempt to make the repairs and deduct their cost from the rent. It comes with ill grace from him now to say that notwithstanding such notice, the plaintiff should have proceeded to make the repairs he had forbidden it to make, and enter upon litigation over their cost and its right to claim reimbursement therefor from the defendant. In 36 C. J. 167 it is said that the rule that the measure of damages is the sum necessary to place the premises in that state of repair called for by the agreement cannot be applied "where the landlord refuses to permit the tenant to make the repairs," citing: Park v. Ensign, 10 Kans. A. 173, 63 Pac. 280. In Forrest v. Buchanan, 203 Pa.

454, a recovery would have been allowed had there been any evidence of the landlord's neglect to repair and of actual pecuniary damage suffered by the tenant resulting therefrom. See p. 456. See also Prescott v. Otterstatter, 85 Pa. 534, 537. In Miller v. Sullivan, 94 Pac. 266 (Kansas), 16 L. R. A. (N. S.) 737, it was held that where a tenant gave seasonable notice to the landlord, and the landlord made continual though ineffectual efforts to repair, the tenant may recover for damages to goods in his storeroom on the leased premises when the extent of such damage is shown with reasonable certainty. The annotator in L. R. A., p. 738, states the law as follows: "It may be stated as a general rule that, where a tenant's goods are injured because of the failure of a landlord to make repairs which he had covenanted or agreed to do,—at least in the absence of evidence showing want of ordinary diligence on the part of the tenant to protect his goods—he may recover for all the damage done to such goods; and he is not limited to the diminution in rental value of the property leased, or what it would have cost him to make the proper repairs."

We think that in the circumstances of this case the same rule applies here.

But the learned judge of the court below was of opinion that two printed clauses in the lease, the 16th and 17th, prevented this measure of damages from applying in the present case. They are as follows: "16. Lessor shall not be held responsible for, and is hereby relieved from all liability by reason of any injury or damage to any person or property in the demised premises, whether belonging to Lessee or any other person, caused by any fire or by any breakage or leakage in any part or portion of the demised premises, *or in any part or portion of the building which the demised premises are a part,* whether such breakage, leakage, injury or damage be caused by or result from

the negligence of Lessor or its agents or any person or persons. *Lessee* hereby, in consideration of the rent herein specified, accepts and assumes such responsibility and liability, *shall have and is hereby given the right to enter into any part of the building of which the demised premises are a part as fully as landlord is entitled to in order to remove, provide against, prevent and discover the cause of any possible injury or damage.* 17. Lessor shall not be held responsible for, and is hereby relieved from all liability by reason of any damage to any person or property in the demised premises, whether belonging to Lessee or to any other person, from water, rain or snow that may leak into, issue or flow from any part of said premises or *of the building of which the demised premises are a part,* from the pipes or plumbing work of the same, or from any place or quarter, whether such damage, leak or flow be caused by or result from the negligence of the Lessor or its agents or any person or persons. *Lessee* hereby, in consideration of the rent herein specified, accepts and assumes such responsibility and liability, *shall have and hereby is given the right to enter into any part of the building of which the demised premises are a part as fully as landlord lawfully could in order to provide against, prevent, discover and remove the cause of the damage."*

The italicized portions of these printed clauses—(they are not italicized in the original lease)—show that they are a form intended for use where a tenant rents a part of a building from the landlord, who keeps in his own custody and control the rest of the building, but who specifically provides by express covenant that the landlord shall not be responsible for any damage to the tenant of a part of the building from water, etc., leaking into such demised portion from other parts of the building in the control of the landlord or leased by him to other tenants, whether such damage results

from negligence or not. Such was the situation in Lerner v. Heicklen, 89 Pa. Superior Ct. 234, cited by the court below in its opinion. The clauses are not properly applicable to a case, such as this one, where the entire building is leased to the tenant, for, under such a lease, in the absence of a promise by the landlord to make repairs he is not liable for any damages sustained by the tenant because of the property being out of repair, and no reason exists for providing against such liability on his part, or for specially granting the tenant access to any part of the building, the whole of which is in his sole possession.

But if they should be considered applicable to this lease of an entire building, then we are of opinion that in the circumstances averred in this case, and under the construction put on the lease by the defendant himself, they are, as respects liability for damage to plaintiff's property resulting from the breach of defendant's special written covenant, so far repugnant to or inconsistent with the fortieth clause,—the tenth typewritten clause—in which the landlord agrees to repair the roof on notice from the tenant, that they must yield to the latter. The covenant to repair, to be of any value, must carry with it an assumption by the landlord of liability for damage for its breach; and the liability so assumed is necessarily to be measured by legal standards. When the tenant is lulled into inaction by the landlord's promises, and is also warned not itself to make any repairs to the roof, as no allowance will be given it for doing so, the landlord may be required, under his covenant to repair, to pay the damage to the tenant's goods naturally resulting from his breach of the covenant. Otherwise the covenant to repair could be rendered worthless by following the course adopted by defendant.

For the purposes of this appeal we must assume the facts to be as stated in the plaintiff's statement and

exhibits. Doing so we think the case is governed by Ehinger v. Bahl, supra.

The judgment is reversed with a procedendo.