## Terry v. Bornstein et al.

454

*Ladner & Ladner*, for plaintiff.

*Wolf, Block, Schorr & Solis-Cohen, B. Greenstein* and *C. O. Mayers*, for defendants.

BROWN, JR., J., February 23, 1935.—This case is before us on defendants' motions for a new trial and judgment n. o. v., following a verdict for plaintiff in the amount of $3,000.

On November 23, 1929, the plaintiff was employed as service manager by Selmi Brothers, automobile dealers, at 4730-32 Chestnut Street, Philadelphia, which was leased by them from the defendants. He was taking a customer's automobile for repairs from the first to the second floor on the elevator used for that purpose, and when the bottom of the elevator was 6 feet below the level of the second floor, the wooden posts supporting the elevator broke, throwing the plaintiff into the pit with the automobile. The posts broke off clean, straight across, not splintering in any way, but there was no evidence showing what caused them to break or their condition prior to this occurrence.

The basis of plaintiff's alleged right to recover damages for the injuries from the defendants is the failure of the latter to perform the duty imposed on them by the provision in the lease to Selmi Brothers that "the lessor (the defendants) is to keep in good condition the heating system, elevator, and roof". The lease was for 1 year commencing November 1, 1929, and was an extension (according to its terms) of a lease for 1 year from November 1, 1928, which provided that "the lessor is to put in good condition the heating system, elevator and roof". But the plaintiff was not a party to the lease, and so, upon first impression, it would seem that he would not be entitled to avail himself of its provisions. No decision of the Supreme or Superior Court has been cited to us, and we have found none, in which it has been expressly determined that where a landlord has contracted to repair, he is liable for injuries occurring to third persons coming on the premises, but there have been dicta to that effect. See Mitchell et ux. v. Geo. A. Sinn, Inc., 308 Pa. 1, 4, where the tenant covenanted to keep the premises in good condition, and Cunningham v. Rogers, 225 Pa. 132, 136, where there was no such covenant by either the landlord or the tenant. In Weidner v. Roeper, 25 Dist. R. 876, where the lease provided that the lessor should make all necessary repairs, recovery was not allowed. This is the view of the majority of jurisdictions. See 36 C. J. 208-210, secs. 881-885; 8 A. L. R. 760-785; 68 A. L. R. 1192-1205; 7 Temple Law Quarterly 215-224, where the minority view also is set forth. However, according to the Restatement of the

Law of Torts promulgated by the American Law Institute (vol. II, pp. 967-968, sec. 357), a lessor is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee, if he has agreed to keep the land in repair. This duty, as it is there stated, "is not contractual but is a tort duty based on the fact that the contract gives the lessor ability to make the repairs and control over them." The lessor is not bound "to make the premises absolutely safe. He is liable only if his failure to do so is due to a lack of reasonable care exercised to that end". The duty "arises out of the existence of the contract to repair", and so "the contract defines the extent of the duty. Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs."

The lease in the present case contains no provision for inspection, and so the questions arise whether the defendants as lessors were given "notice of the need of repairs" and whether if such notice was given, they did not exercise reasonable care. William Selmi, one of the lessees, testified on behalf of the plaintiff, that in September 1929, prior to the execution of the second lease, he told Mitchell L. Goldman, one of the lessors (who apparently had authority to act for the others), that the insurance company covering liability on the elevator had canceled lessees' insurance because it thought the "elevator was unsafe" and "certain repairs should be made" before the insurance would be reinstated; that the elevator wobbled, and that they (the lessees) would extend the lease providing the lessors made "certain repairs for the safety of the building". He stated that this was stipulated in the lease, but there is no provision in the lease that the lessors should make "certain" repairs, the provision being that they should "keep" the elevator in good condition. He testified further that the elevator was not fixed before the plaintiff was injured. Goldman denied that Selmi made any complaint to him regarding the condition of the elevator after the first lease was signed but, in view of the verdict in plaintiff's favor, the fact will have to be taken that Selmi told him approximately 2 months before the accident that "the elevator was unsafe" and that "repairs should be made". It does not appear anywhere in the record, in what respect the elevator was unsafe other than that it wobbled, but Alexander C. Cain, an elevator inspector of the City of Philadelphia for over 20 years with 20 years' prior experience as an elevator erector, testified that in order to prevent heating, there must be play in the guides; that any elevator, if something is pushed on it, and especially one of the type of this elevator, will wobble. He inspected it on October 22, 1929, before the accident, and filed a written report in the performance of his official duties, that the elevator was then in good condition. True, he was called by the defendants, but he knew none of the parties, and as his testimony was not contradicted, and what he did was in the discharge of his official duties, it may be given full credence. But, irrespective of this, the defendants had before them a copy of the report filed, subsequent to the lessees' notice to them, that the elevator was in good condition, and so it cannot be held that "reasonable care" was "not exercised" by them. A careful and prudent person receiving such a disinterested and official report, and not having been notified of any particular defect, had the right to assume that the elevator was in a safe condition as of the date of the report, and not having received any subsequent notice from the lessees of the need of repair, that it continued to be in good condition.

The plaintiff also relies upon the principle that a landlord out of possession

is liable for injuries occurring to third persons coming on the premises when he has let the premises in a ruinous or dangerous condition, but as pointed out above, the second lease was according to its terms, "an extension of" the first lease, and consequently, for this principle to be applicable, it is necessary to consider what the condition of the elevator was at the time when the lessees executed the first lease and entered into possession of the premises. The only testimony upon this point was that of the defendant Goldman. He stated that the gate was off the elevator and that it was replaced before the lessees 'went into possession. This was not contradicted or denied, and the fact that the elevator was subsequently used for a year 'before the plaintiff was injured, indicates that it was not in a ruinous or dangerous condition when the lessees first occupied the premises. Of course, if defects were present at the time of the execution of the first lease and were such as could have been discovered and remedied by ordinary prudence in the exercise of due care, then the defendants are responsible, providing such defects continued and were the cause of plaintiff's injuries, but there was no evidence showing specific defects or bearing upon the condition of the posts which broke, and also none showing what caused them to break. Indeed, the second lease provided that the defendants were to "keep" the elevator in good condition, whereas the first one stated that they were to "put" it in good condition. The inference is obvious that it was in good condition when the second lease was executed.

There is no doubt that the mere happening of an accident causing injuries to a passenger in the operation of an elevator raises a presumption of negligence: McKnight v. S. S. Kresge Co., 285 Pa. 489, but there is "no presumption that the elevator was unsafe or defective" when an employe has been injured: Montgomery v. Rowe, 239 Pa. 321, 322. In that case "the plaintiff showed nothing beyond the mere happening of the accident", and "as his action was against his employer" recovery was not permitted. As "it is clear the landlord should not be liable where the tenant would not be": Mitchell et ux. v. Geo. A. Sinn, Inc., 308 Pa. 1, 7, the burden was on the plaintiff to show more than "the mere happening of the accident" in order to recover against the defendants, as the latter are "permitted all defenses available to" their lessees: Mitchell et ux. v. Geo. A. Sinn, Inc., supra, 5, 6. He was the employe of the latter, and besides he was actually operating the elevator at the time when he was injured as he had done many times during the preceding year. As the lessees' service manager, he was in charge of the portion of the premises devoted to that work, of which the elevator was a part, and to prove merely that the posts broke without showing the cause or condition thereof was not sufficient. Indeed, the posts broke off clean, straight across, without splintering in any way, and, so far as the evidence discloses, any defect in them was latent. Hence, there is no presumption that the defendants had notice thereof, such as there might be if the defect were patent or a structural one: Sack v. Ralston, 220 Pa. 216, 219. It is also pointed out in that case at pages 217 and 218, that the plaintiff there, a drayman, who was delivering groceries at the time the elevator fell, and who used the elevator nearly every week for 2 or 3 years before the accident, had to prove more than the mere happening of the accident, to present evidence "to explain the cause of the fall of the elevator." The elevator there under consideration "on the day it gave way, it was apparently in the same condition it had been in during that entire period", the period during which the man, who was injured, had used it, and the same may be said of the elevator in this case during the year the plaintiff used it. As to latent defects, see also Kehres v. Stuempfle et al., 288 Pa. 534, 540, and cases there cited, holding that there can

be no recovery for injuries occurring as the result of such defects. The doctrine of res ipsa loquitur is not applicable, especially as the plaintiff was operating the elevator at the time he was injured: Direnzo v. Pittsburgh Bridge & Iron Works, 265 Pa. 561, 563.

The lease provided also that "the lessee hereby releases the lessor from all responsibility, and assumes all liability in any action for damages which may arise from any kind of injury to any one by and on account of the use, misuse or abuse of all elevators, hatches or openings of any kind whatsoever that may at any time exist upon the premises, or that may arise from any other cause". The present suit is an "action for damages" arising from injuries sustained by the plaintiff "by and on account of the use" of the elevator, for which, according to the terms of the lease, the lessees (Selmi Brothers), and not the lessors (the defendants), are responsible. If by virtue of the other clause in the lease that the lessors are to keep the elevator in good condition, the plaintiff is entitled to recover from them, then they would be entitled to recover from the lessees such sum as they may have to pay to plaintiff. Or it may be considered that this clause, being clear and specific, prevents the plaintiff from recovering from the defendants. As pointed out above, the duty of the lessor of land (according to the Restatement of the Law of Torts) "arises out of the existence of the contract to repair", and "since" this is so, "the contract defines the extent of the duty". This may be limited merely to the obligation of the lessors, but when the lessee covenants to keep the premises in good condition, as in Mitchell et ux. v. Geo. A. Sinn, Inc., supra, 4, or assumes liability for injury by and on account of the use of a particular part of the premises such as an elevator, the express provision in the written lease should prevail.

True, the lessees' assumption of liability for injuries to the users of the elevator is contained in the printed portion of the lease and the lessors' covenant to keep the elevator in good condition appears in the typewritten part, and if they were repugnant, "the printed form must yield to the written terms, deliberately chosen to express the intention of the parties in the particular case": Leon Gabai, Inc., v. Krakovitz, 98 Pa. Superior Ct. 150, 154, but they should be interpreted so that the lease "as a whole may be carried into effect. If possible, no part of a contract or of a lease should be disregarded or treated as a nullity or a redundancy: McMillin v. Titus, 222 Pa. 500, 502, 503. The two provisions should be so interpreted that each will be given an independent meaning, and, as a result of the interpretation, the whole will be reasonable": Moran v. Bair et al., 304 Pa. 471, 475, 476. It seems to us clear that the two clauses are not repugnant. A lessee may well assume liability for injuries to persons coming on the premises or in the use of an elevator, and the lessor agree to keep the premises or an elevator in good condition. The first defines their obligations to third persons and the second as between themselves. The two are reasonable and consistent, because if the lessors breach their covenant, the lessees have their proper remedies, and if a third person is injured, he looks to the persons actually in possession of the premises, the lessees. The latter, under the lease, assumed liability for injuries sustained in the use of the elevator, and so there is no repugnancy in the two provisions. However, the effect given by law to the covenant to keep in good condition, that a third person may recover from the lessor for personal injuries, may make it appear that the two clauses are repugnant; but when two parties put their agreement in writing, and the purpose is not unlawful, that agreement controls as between them, and so when the right of a third person is based upon the agreement, its terms should be

458

binding upon him, especially where the agreement contains a provision clearly applicable to the right which he asserts, as does the lease now before us to plaintiff's action for damages arising from "injury" in the use of the elevator.

It is to be noted that in his statement of claim, the plaintiff did not aver that notice had been given to the defendants that the elevator was unsafe and in need of repairs. "The negligence alleged by the plaintiff" was that the "defendants wholly omitted to perform their duties in respect to the elevator . . . to provide said elevator with proper safety devices and permitted some to be out of order and repair, and in a dangerous and defective condition, and did not cause to be properly inspected and examined". He thus based his right to recovery upon the broad ground that the defendants failed in their duty to keep the elevator in good condition, and not upon their failure to make repairs after notice. At the trial, however, he relied upon the giving of such a notice. It seems to us that the two positions are not consistent. It is one thing to charge a person with an absolute duty to do something irrespective of notice, and an entirely different thing to hold him responsible only after notice. If notice is essential, as it appears to be in view of the phraseology of the lease and the applicable principles of law, referred to above, it should have been pleaded. It is a new charge of negligence, and as it is, in effect, a new cause of action, the plaintiff is now barred from asserting it by the statute of limitations. If notice is not essential, then it need be neither averred nor proved, and so the defendants were prejudiced by the admission of evidence that notice had been given. The case having been tried by the plaintiff, and submitted to the jury, on a theory or cause of action differing from that set forth in the statement of claim, and the defendants having taken proper exception to the admission of such evidence, they are entitled to a new trial. This we would grant if we were not of the opinion that they are entitled to judgment n. o. v.