## J. SCHLITZ BREWING CO. v. JOHN McCANN.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 1, 1887—Decided January 3, 1888.

In an action for damages for the breach of a contract by the lessor with the lessee of a saloon, not to permit the sale of liquors in an adjoining room controlled by the lessor, though the testimony may not furnish

the data for an exact calculation, yet it is not error to instruct the jury to make an estimate, as best they can under the evidence, as to what damage the plaintiff sustained through the violation of the contract.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 157 October Term 1887, Sup. Ct.; court below, No. 192 July Term 1885, C. P. No. 2.

On May 26, 1885, John McCann brought an action of assumpsit against the J. Schlitz Brewing Co., to recover damages for the breach of a parol agreement made on March 17, 1884, when the defendant company executed to the plaintiff a lease for saloon purposes of premises under the Academy of Music at No. 816 Liberty street, Pittsburgh; by which agreement the company bound itself to prevent the sale of liquors in an adjoining room, then within its control, during the tenancy.

At the trial on March 9, 1887, when the plaintiff's case was closed, a motion for a nonsuit was made and refused. No testimony was offered on the part of the defendant. As the contention in this court was solely upon the instructions to the jury upon the ascertainment of damages, the facts sufficiently appear in the charge of the court below and in the opinion of this court.

The court, WHITE, J., charged the jury as follows:

This is an action based upon an alleged verbal agreement accompanying a written agreement or lease between the plaintiff and defendant, the plaintiff alleging that at the time he took the lease from the defendant company for the room on Liberty street, and before the paper was executed, there was an agreement between himself and the defendant company that they would not permit liquors to be sold in the adjoining room over which the defendant company had control or were about to get control.

Now if that verbal agreement was a part of the arrangement between the parties to the lease and if, as a part of the consideration for the signing of the lease, this verbal agreement was made, and made before the signing of the lease, it would be binding upon the defendant company. If it had occurred afterward, and was simply a promise on the part of

### Charge of Court below.

the defendant company, not to permit liquor to be sold there, and without any consideration to support it, it would not be binding; but if agreed to before the lease was signed, and if the plaintiff was induced to sign this lease because of this verbal, contemporary arrangement, then it would. Upon that point we have the testimony of the plaintiff himself, with that of two or three other witnesses, and if that evidence is believed by you, it indicates that after the agreement was drawn up in the office of the counsel, with these two or three representatives of the defendant company present, the plaintiff called attention to it and the agents then and there promised that they would not permit liquor to be sold in this adjoining room, and that after the arrangement was made, then the lease was signed, and the general agent of the company, according to the testimony of one witness, said to the agent who resided here "we must protect McCann in the business under the lease." If you believe that testimony it shows a cotemporary verbal agreement in connection with the written agreement, made at the time and before the lease was signed, as a part of the arrangement between the parties, and which, as I have said, would be binding upon the defendant company. Now, was that agreement broken by the defendant company?

It seems that defendant had control of this adjoining room and rented it to Mrs. Reineman; that the plaintiff's lease began on April 1, 1884; that some other party had control of the adjoining building from that time. At first it was rented to a Mr. Brown from whom Mrs. Reineman bought the lease about the middle of March, 1885. Then it was simply an eating house, as I understand, without the sale of any liquor, although the plaintiff testified that shortly after he commenced he went in there to see Mr. Brown, having heard that he had been selling liquor, and that he promised to give it up, and, so far as the evidence goes, there is nothing to show that he did sell it after that time, and no evidence that Mrs. Reineman sold it until after she obtained her license, May 1, 1885, when she got possession of the adjoining room and then began to sell it in the little bar room which she rented, and also in the room that she rented from defendant company, which room was used more particularly as a dining-room; that she sold liquors there, not only in connection with meals, but

apart from them, and the evidence is that the plaintiff called upon the defendant's agents here and also wrote to the company remonstrating against it, and that no attention was paid to it. If you believe that testimony, and believe that liquors were sold there regularly, it is a violation of this verbal agreement.

The next question would be as to the damages that the plaintiff has sustained. The burden of proof is upon the plaintiff to establish his damage. He gave a statement of his receipts during the first sixty-four weeks he was in business there, which would extend from some time in September, 1883, until about January 1, 1885. He stated that his receipts during that time were some fifteen thousand dollars. He then showed his receipts for the next sixty-five weeks, which would be from January 1, 1885, to April 1, 1886, a year and three months; and during that period, which was one week longer than the other, his sales were some ten thousand dollars; or a difference of some five thousand dollars. That estimate I do not think is entitled to much consideration by the jury, for this reason: There is no specific statement as to what his decrease of business was between January and May, 1885. During that time, according to the testimony, he could not have been injured by sales in this adjoining room, because there were none, but his business was decreased according to the evidence given by himself, and as to the amount of that decrease we have no evidence, nor have we evidence as to the subsequent months compared with the prior months. He said that for some months in 1885 the receipts were less than in 1884, and in some months more; but aggregating the receipts for the whole period of time, some fifteen months, embracing four months before Mrs. Reineman took possession, his losses were so much in business; but it does not follow, by any means, that that decrease in business was the result to that extent of sales in this adjoining room; especially it does not follow as to his losses for the four months prior to the time that Mrs. Reineman began to sell. There must have been some other cause for it. He testifies that, comparing May, 1885, with May, 1884, his losses in sales were about three hundred dollars. How much of that resulted from sales taking place in this room we do not know because there appears to have been a decrease in his business from some

Charge of Court below.

other cause. But you have other evidence; you have evidence that from the time Mrs. Reineman commenced selling in May, 1885, until March, 1886, a period of ten months, she was selling liquor, not only in the bar-room (an extra room that she rented from another party), but that was used in connection with her saloon—the room she rented from the defendant company—and that liquors were sold there, as well as in the bar-room; parties would come in there for liquors, sit down at a table in that room, and be waited upon there just the same as in the bar-room, and the waiter said he supposed that every day or nearly every day during that ten months, liquors were sold there. Now, to what extent they were sold, we have no further evidence than the testimony of various witnesses that they drank liquor there. How much was sold we do not know; how much it interfered with the plaintiff's business is a matter of uncertainty. It is very natural to infer that if there was a saloon open next door to the plaintiff's saloon, and one door nearer to the "show" as they call it—the Academy of Music—that it would draw off some custom from the saloon of the plaintiff; that people would naturally drop into the first door they came to, and as many of the persons who go to those musical entertainments want to drink every time they come to a stop in the performance, they would naturally get their drink quickly and hurry back to the hall, and it may be inferred that the plaintiff lost money in his trade and business in consequence of there being a saloon one door nearer than his own to the entrance of the Academy. To what extent that injured his business you must ascertain in the best way you can from the evidence. This is a violation of the agreement made by the defendant company, if you find the agreement as I have indicated, and even if there was no damage shown, the plaintiff would be entitled to nominal damages for that violation; [but there is evidence to go beyond nominal damages].[1] We have this testimony on the part of the plaintiff, that about one half of all the money realized from the sale of beer is clear profit. The brewer gets the big profit, and then the saloon keeper gets a clear profit of one half the money he takes in. [It is for the jury to make an estimate as best you can under the evidence, as to what damage the plaintiff sustained through the violation of that arrangement.][2]

The verdict of the jury was in favor of the plaintiff for $391, and judgment being entered thereon, the defendant took this writ, assigning as error:

1, 2. The parts of the charge embraced in [ ] [1] [2]

*Mr. C. C. Montooth* (with him *Mr. E. A. Montooth*), for the plaintiff in error.

1. The statement of the plaintiff showing that his sales from September 1, 1883, to about January 1, 1885, amounted to $15,227.75, and from the latter date until April 1, 1886, to $11,185, a decrease of $4,041.85, was dismissed from consideration by the court, without objection or exception by counsel. If we inquire, then, where is the evidence to warrant a recovery for more than nominal damages, it must be found, if at all, in the testimony of plaintiff and four other witnesses. Yet, the court said: " To what extent liquors were sold [in the adjoining saloon], we have no further evidence than the testimony of the various witnesses that they drank liquor there. How much was sold we do not know," etc.

2. There was error in the instruction: " It is for the jury to make an estimate as best you can under the evidence, as to what damage the plaintiff sustained through the violation of that arrangement: " Gilmore v. Hunt, 66 Pa. 321.

*Mr. T. H. Davis*, for the defendant in error:

1. It is often said that in actions founded on contracts, the rule is compensation. What is compensation ? In many contracts the parties fix the measure ; in others, the contract furnishes no standard. No general rule can be prescribed. While speculative damages may not be allowed, yet there are many cases in which a plaintiff has been held entitled to the reasonable profits he would have made had the contract been fulfilled, because such profits are considered as in the immediate contemplation of the parties when the contract is made : Hoy v. Gronoble, 34 Pa. 10 ; Billmeyer v. Wagner, 91 Pa. 92. Where a wrong has been done, the wrong-doer must suffer from the impossibility of accurately ascertaining the amount of damage : Leeds v. Amherst, 20 Beav. 239.

2. Gilmore v. Hunt, 66 Pa. 321, is not analogous. In it there was a fixed standard by which the damages could be

measured, a standard fixed by law, as the contract broken was a contract for the sale and delivery of the possession of real estate. In the present case, throughout the charge the jury were instructed that the measure of the plaintiff's damages was the injury he had sustained in his business.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff in error admits its liability for nominal damages for its breach of contract with McCann, but denies that there was evidence to justify the submission by the court to the jury of the question of damages beyond a nominal sum. As the assignments of error relate to this subject, it is necessary to examine the testimony in order to determine whether the court was guilty of error in this particular or not.

McCann leased a room for the sale of liquors from the plaintiff company with the agreement that he should purchase his beer from the company, and that the company should not permit the sale of liquors in the adjoining store controlled by them and situated between his store and the entrance to the Academy of Music. During most of the last year of his lease liquors were sold openly and regularly in the adjoining store occupied by Mrs. Reineman, a tenant of the Brewing Company. The plaintiff alleged that his business was sensibly diminished by the sales made by Mrs. Reineman, and this action was brought to recover damages for the breach in this particular of the contract between himself and the Brewing Company. He testified that his business during the last fifteen months of his lease fell below that of the preceding fifteen months by $4,041.85, and that his profits after deducting all expenses would be one half his gross sales. He says that he noticed a material decrease in his sales of liquors after the sale began in the store of Mrs. Reineman. As to the quantity sold by her his testimony is as follows: "I have seen them deliver kegs of beer there to Mrs. Reineman. Q. More than one keg of beer? A. Yes, sir; I have seen them deliver it there time and again."

Thos. B. Clark testified as follows: "Q. You saw beer being sold in there; how do you know it? A. I drank it there myself. Q. See any other person do it? A. Yes, sir, I did. Q. How often? A. I don't know how often; it was

a common occurrence for people to drink there in the dining-room. Q. Was it frequently? A. Yes, sir; often when I would be up at the show; sometimes I would take a meal there in the house. Q. Were there other persons there from the show doing the same thing? A. Oh, yes, sir; it was handy to go in there, nearer than any other place. Q. Do you know how long that continued—the sale of beer there? A. Over a year, I know."

Mrs. Reineman was also examined, and testified that she took a license on the first of May, and sold all that year. M. J. Rafferty testified that he was often in Mrs. Reineman's to drink; went in between acts and after the show, and took beer with other parties. Jacob Harris worked as a waiter for Mrs. Reineman. He testified that he served customers with drinks very frequently: that it was his duty to serve them with drinks, and he did it.

This testimony showed the open and continuous sale of liquors by Mrs. Reineman to all comers; and that many persons went in there to drink because it was nearer to the theatre than McCann's place. It showed also a steady falling off in the custom of McCann amounting to over $4,000 in the last fifteen months of his lease. While it is true that this testimony does not furnish the data for an exact calculation of the damages sustained by McCann, it is also true that the court would not have been justified in withdrawing it from the jury by an instruction that the plaintiff was entitled only to nominal damages. He had suffered a very considerable loss, as his books clearly showed. The continuous sale of drink in the room between his own and the entrance to the theatre afforded one reason and an adequate reason for the falling off in his own business. The sale was in direct violation of the agreement of the Brewing Company.

We do not see how the court below could have done otherwise than to submit this evidence to the jury with careful instructions as to their duty in the premises. This was done, the court instructing the jury substantially that it was their duty to ascertain as correctly as they could, under the evidence relating to that subject, what damage had been done the plaintiff by reason of the defendant's breach of the agreement not

to permit the sale of liquors in the store occupied by Mrs. Reineman.

>The errors assigned are not sustained, and the judgment of the court below is affirmed.