Minster et al. *v.* Penna. Co. for Ins. on Lives and Granting Annuities et al., Appellants.

Argued October 12, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Harry Shapiro,* for appellant.

*E. Spencer Miller,* for appellees.

Opinion by Cunningham, J., March 14, 1932.

These two cases involve reciprocal claims by a lessor and his lessees. The lessees claimed damages for

breach of the lease by the lessor while the latter claimed the unpaid balance of rent for the term. The jury found in favor of the lessees in both cases, awarding them damages in the amount of $714.33 and disallowing the lessor's claim for rent. The executors of the lessor (who died pending trial) have taken these separate appeals from the judgments entered on the verdicts.

Mrs. Minster and Mrs. Just had been conducting a dressmaking business. On August 8, 1921, they entered into a lease with Judovich for the eastern half of premises at 1719 Chestnut Street, Philadelphia. The lease was to take effect September 1, 1921, and to run for a period of one year. In addition to the usual provisions the lease contained the following stipulation: "The lessor agrees with reasonable haste to do the following work: Install sufficient radiation to produce comfortable heat in the demised premises. Install one new washstand and one new toilet. Paper side walls and ceiling of the entire store. Repair the floor where necessary. Close up and floor over present entrance to the cellar. Enlarge the window in the northern end of the store." The lessees claimed the landlord failed to perform the work stipulated in the lease and thereby rendered the premises untenantable; they did not move in. Counsel for the lessees, on November 1, 1921, wrote a letter rescinding the lease; this precipitated the present actions.

The lessees, in depositions taken prior to the death of the lessor, testified in detail to the actual work done on the premises. They stated that on September 1, 1921, only one radiator was in the store, and that no work was commenced to install further heating apparatus until the 15th or 20th of October, 1921. This was corroborated by the contractor in charge of the installation, who stated that radiators were not placed and connected until the latter part of November or the early part of December and that the original

radiator in the store could supply not more than twenty-five per cent of the necessary heat. It was also in evidence for the lessees that the walls were only partially papered and such paper as was put on was uneven and insecure; the floors were rough and uneven and, although work on them was completed in the latter part of October, they were still unsafe for customers; furthermore, despite assurances by the lessor, the premises were not wired for electricity and it was necessary for the lessees to pay for wiring and fixtures. After waiting for some time without obtaining the desired repairs, they found that any further delay would be disadvantageous to their business and therefore determined to rescind the lease. The cases were submitted to the jury to determine whether the specified work had been done with reasonable haste and this question was answered in the negative.

While appellants attempted to contradict the evidence offered in behalf of appellees, the testimony of the latter, if believed, was sufficient to show that the stipulations in the lease had not been fulfilled; it was proper therefore to submit the cases to the jury. Appellants, however, did not contend in this court that the evidence was insufficient to sustain the verdicts, but argued that as the lease contemplated certain alterations, but did not stipulate any definite time within which they must be made, the lessees could not rescind for delay in performance without proving that they had given notice to the lessor of their intention to rescind and had first called upon him to perform within a reasonable time. In support of this contention appellants cite numerous general statements from decisions in cases in this and other states involving the sale of goods or the construction of buildings. It may be conceded that where a contract sets no time for performance at all, or where the parties to a contract permit the original date for performance to pass by without objection, neither can abandon it without

setting either an original or a secondary time for performance. This principle rests on the theory that where a contract is originally indefinite as to time, or has become indefinite by mutual agreement, neither party has the right to put the other in default without giving him a reasonable time within which to make good. Such, however, is not the case here. The subject matter of this contract was a storeroom, to be occupied by women engaged in the dressmaking business. The time for enjoyment of the premises was a fixed period running from September 1, 1921. If the proposed tenants could not have the alterations completed at the time set for possession, or as soon thereafter as would be reasonable in view of the work contemplated, they would lose the benefit of their bargain while remaining under their obligation 'to pay rent. This is not a case where the time for performance could remain indefinite without imposing a burden on either party. It is only fair to assume that the repairs agreed upon were reasonably essential to the use of the premises as a dressmaking establishment and that it was contemplated by the parties that they should be made as soon as possible. It is not necessary to discuss whether they should have been completed at the time fixed for possession; the lease was not rescinded at that time. The fact is that under appellees' testimony, which we must accept as true, the work was not only not completely performed by the end of October but even at that late date there were no adequate facilities for supplying heat. Lessees could scarcely be expected to open a dressmaking establishment under such circumstances and we think the jury was justified in concluding that the repairs had been unreasonably delayed.

Furthermore, the verdicts may be justified even under appellants' own theory. Mrs. Minster testified that she and her partner several times called the attention of the lessor to the fact that the work had not

been done according to the stipulation. After promises that it would be done "at once" and "as soon as possible," the lessees were given a promise that the alterations would be completed by the 15th of September, 1921, and, when nothing was done by that time, a second assurance that the work would be done by the 15th of October. The lessees made successive requests for performance and the lessor, after making indefinite promises, twice fixed specific dates for completion. The situation therefore is that the party, whose executors now seek to avoid his default by claiming that no time was fixed for performance, twice made that time definite by his own word. Certainly, after the second of those dates had passed, the lessees were entitled to rescind the lease.

The only other objection urged by appellants is that the letter of rescission of November 1, 1921, should not have been received in evidence because it contained self-serving declarations. The learned trial judge refused to admit the letter for the purpose of showing the reasons assigned therein by the lessees, but admitted it "on the question of rescission." Manifestly, where parties aver they rescinded a contract they may properly introduce into evidence their notice to the other party of such rescission. The letter was admitted for this purpose only.

None of the assignments can be sustained.

The judgments are severally affirmed.