Opinion by
 

 Baldrige, J.,
 

 An action of assumpsit was brought to recover the sum of $1,000 with interest alleged to have been fraudulently obtained from the plaintiff by the defendant’s driver and salesman, George B. Craig, by overcharging for merchandise delivered during a period of two years. A trial was had before Judge Bonniwell without a jury which resulted in a finding for the plaintiff. The defendant appealed.
 

 The plaintiff operates, in connection with a drug store, a lunch counter. She purchased bread, rolls, cakes, etc., from the defendant through orders given to Craig who made the deliveries. It was his practice to leave a slip purporting to contain the quantity of merchandise delivered and the prices charged therefor. The plaintiff, through her husband, paid at short intervals, generally by a check drawn to the order of defendant, the amount due as shown by the slips. Craig promptly settled with his employer for the amount of bread he delivered.
 

 Mr. Friedman, the plaintiff’s husband, in April of 1938, started to check on the bills coming in and discovered a discrepancy between the amount of merchandise paid for and that received. He employed a detective agency and so informed Mr. Yirnelson, vice-president and general sales manager in charge of defendant’s Philadelphia office, who told Friedman to proceed with the investigation, which lasted two weeks. It disclosed that Craig, during that period, had been overcharging the plaintiff an average of $2 per day, exclusive of Sunday. These results were communicated to Mr. Virnelson, who had defendant’s counsel summon Craig to his office where a conference was held for the apparent
 
 *554
 
 purpose of ascertaining the amount he had overcharged the plaintiff. Craig, confronted with the results of the investigation, stated that he had overcharged the plaintiff an average of $2 a day for the past two years. A second meeting was held the following day, April 26, 1938, which was attended by the husband of the plaintiff, her attorney, Craig, and a Mr. Schell, the sales manager of defendant’s Ridge Avenue Branch and Craig’s immediate superior. A writing was prepared at that time, which set forth that Craig had overcharged the plaintiff to the extent of $1200 which he agreed to repay in the following manner: A credit of $76.45 was given offsetting a current bill due the defendant from the plaintiff, and a cash payment to be paid by Craig of $23.55 on April 28, or a total of $100. Craig was to pay the balance in weekly instalments. The paper was signed by Craig and under his signature appeared “J. T. Schell of Parkway present.”
 

 Mr. Friedman testified that the defendant had agreed to retain Craig in its employ until he paid off the entire amount due and that the witness had expressly informed the defendant that he looked to it for the entire sum due if at any time Craig failed to meet the payments. The defendant company retained Craig in its employ until September 1938 when he was discharged and payments then ceased. The amount paid the plaintiff totaled $200.
 

 The main controversy before us is whether there was sufficient evidence adduced in this case to warrant a finding in favor of the plaintiff.
 

 . Reference is made to the failure of plaintiff to produce records showing what merchandise had been received from, or payments made to, the defendant, other than certain checks which were offered in evidence, which defendant alleged covered only obligations validly owed for merchandise. It is contended that the vague and uncertain statements of Craig, and his written
 
 *555
 
 confession were the sole source of knowledge of any overcharge, other than for the short period a detective was actually covering Craig’s conduct, and that brief time gave no basis for computing a definite amount the plaintiff was previously overcharged; that the excessive charges during that period were returned by Craig in the payments of $200.
 

 Ordinarily it is incumbent upon the complaining party to fix his losses with a fair degree of certainty, as damages are not to be presumed:
 
 Schoenberger v.
 
 James, 104 Pa. Superior Ct. 177, 180, 158 A.
 
 638; Steel et al. v. Snyder et
 
 ux., 295 Pa. 120, 144 A. 912. The plaintiff, however, should not be deprived of her right to recover because of an inability to measure with absolute accuracy the amount of money unjustly and illegally collected. There were apparently no records within her possession that would disclose the definite amount of overcharges, and it was impossible to obtain that information. The investigation conducted by the detective agency showed that Craig consistently was overcharging about the same amount each day. This was followed by the admission of Craig, the only person who had knowledge, of the approximate total sum illegally collected during the period of two years. This testimony, together with the proof of the purpose of and what transpired at the meeting in the office of' defendant’s counsel, was, in our judgment, sufficiently definite to establish the amount of the overcharge. As the learned court below pointed out, Craig’s interest, as he agreed to repay plaintiff, was to minimize the extent of his wrongful conduct.
 

 The attorney for the appellant at times during the trial successfully objected to Craig’s testimony as to the extent of his fraudulent overcharges. The objections should have been overruled as that testimony was admissible. The plaintiff, however, did prove by other competent evidence the fraudulent acts, which warranted the court’s finding.
 

 
 *556
 
 Damages, recoverable are generally involved in some uncertainty and contingency, and therefore reasonable certainty only is required. Relief given by way of damages for a breach of contract is rarely, if ever, the exact sum which compensates for the injury done. “An element of uncertainty in the assessment of damages or the fact that they cannot be calculated with mathematical accuracy or with absolute certainty or exactness is not a bar to their recovery......Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery.” 15 Am. Jur., Damages, §§21, 23.
 

 In
 
 Rothranff et ux. v. Sinking Spring Water Company,
 
 339 Pa. 129, 135, 14 A. 2d 87, the court said: “It is true that the damages thus computed are not likely to be wholly accurate, but the law requires only reasonable certainty as distinguished from mere conjecture.” See, also,
 
 J. Schlitz Brewing Company v. John McCann,
 
 118 Pa. 314, 321, 12 A. 445;
 
 McElroy v. Filby,
 
 83 Pa. Superior Ct. 47, 50.
 

 In
 
 Osterling v. Frick et al., Exrs.,
 
 284 Pa. 397, 404, 131 A. 250, the court held that although damages cannot be based upon mere guess of speculation, if the amount can be fairly estimated a recovery \tfill be sustained. “It has been truly said that ‘Substantial justice is better than exact injustice.’ ”
 

 Cases respecting the liability of an employer for an agent’s overcharge in the selling of its merchandise are not in entire harmony.
 
 Yoars v. New Orleans Linen Supply
 
 Company, (La.) 185 Southern 525; and
 
 Brooks v. Gray-Von Allmen Sanitary Milk Co., 277
 
 S. W. 816, are two of the leading cases that hold that the principal is not liable when the fraud of the agent
 
 *557
 
 could be easily detected by the purchaser and that his neglect or want of prudence must be regarded as the proximate and efficient cause of the loss.
 

 The great weight of the authority, however, is to the contrary, and holds that the employer is liable to a customer for fraudulent overcollections.
 
 Birkett v. Postal Telegraph-Cable Company,
 
 (107 App. Div. 115) 79 N. E. 1101;
 
 Wilmerding v. Postal Telegraph Company,
 
 (118 App. Div. 685) 85 N. E. 1118;
 
 Cleaney v. Parker,
 
 (167 Ala. 134) 51 So. 951;
 
 Berkovitz v. Morton-Gregson Co.,
 
 (112 Neb. 154) 198 N. W. 868; and
 
 Baltimore American Ins. Co. v. Ulman,
 
 (Md.) 170 A. 202, are some of the many cases which approve that rule. Our own cases, in holding that if an agent does a wrongful and unauthorized act in the course of his employment the principal is liable, are in harmony:
 
 Fire Insurance Company v. Bradford,
 
 201 Pa. 32, 36, 50 A. 286. Negligence and want of prudence on the part of the purchaser is not a good defense in a suit against the principal for an agent’s falsehood or fraud:
 
 Max Meadows Land and Improvement Company v. W. G. Mendinhall,
 
 4 Pa. Superior Ct. 398, 401. See, also,
 
 Anderson v. Snyder,
 
 14 Pa. Superior Ct. 424, 429. This defendant is an entirely reliable concern and the plaintiff had the right to assume its agent was trustworthy and honest.
 

 We think there is no question that Craig, who was apparently authorized to collect on behalf of his employer, fraudulently made overcollections and that the defendant is liable therefor: 2 Am. Jur., Agency, §367;
 
 Fire Insurance Company v. Bradford,
 
 supra;
 
 Birkett v. Postal Telegraph-Cable Co.,
 
 supra;
 
 Cleaney v. Parker,
 
 supra;
 
 Baltimore American Ins. Co. v. Ulman,
 
 supra.
 

 Judgment is affirmed.