## Fred Whitaker Co. v. Cohen

*Souser, Schumacker & Taylor,* for plaintiff.

*S. C. Nissenbaum, D. Kanner, Norris, Bell, Lex Hart & Eldredge,* for defendants.

SLOANE, J., May 31, 1955.—This nonjury trial is an action in assumpsit by a lessee of a warehouse against its lessors for damages by rain through a leaking roof, averred to be in bad repair in breach of the lessors' obligation to keep in good repair.

The property involved is a one-story, 15,000 square-foot warehouse, 3441-43 Bowman Street, Philadelphia, used by plaintiff for the storage of wool. The rainfall starting the damage came over the weekend of June 14-16, 1947, but almost entirely on the one day of June 14th. At that time, plaintiff, in the wool business, was in possession under a lease with defendants' predecessor in title. This lease was made May 31, 1946, for a term of two years commencing July 1, 1946. By conveyances on March 10, 1947, defendants became the record owners[1] of the property, subject to the existing lease.

On April 9, 1947, plaintiff as lessee and defendants as lessors made a new written lease for a term of three years commencing August 1, 1947. The last 11 months of the first lease thus were canceled since it was superseded by the new lease as of August 1, 1947. The alleged damage occurred while the first lease was still in effect (though after the execution date of the

---

[1] Defendants were actually straw parties but no question is raised on that score. Admittedly the real owners, Irving Shanhart and Samuel A. Cohen, are defending the case.

second one) and thus the provisions of the first lease concern us.[2] The first lease did provide, in a typewritten paragraph, no. 31, added to the printed form:

"Lessor undertakes to keep the roof in good repair during the term of this lease, but shall not be held liable for damage to goods or merchandise caused by defective condition of the roof or spouting unless Lessor has failed to make repairs within a reasonable time after having been notified in writing by Lessee, of such defective condition."

This paragraph is inconsistent with a printed paragraph of the same lease, in which the lessee agrees to release the lessor from liability for injury to persons or damage to property in the demised premises, whether belonging to lessee or any one else, caused by various kinds of damage including rain or water damage. This paragraph has certain printed words crossed out and others added in ink in their stead,[3] but it still raises a contradiction with paragraph 31, to be resolved by considering the typed matter to be the final thinking on the subject and therefore the final agreement. The printed part therefore must yield to the written (typed) provision (Onofrey v. Wolliver, 351 Pa. 18, 23; Leon Gabai, Inc., v. Krakovitz, 98 Pa. Superior Ct. 150, 154), and it follows that the original lessor was bound by a covenant to make roof repairs. The original lessor's grantees, defendants here, also are bound by this covenant to repair since they took title subject to the lease and a covenant to repair runs with the land: Kershaw v.

---

[2] There is a small claim under the second lease for the rental value of space rendered unusable by rain water. The second lease has a repair covenant less broad than in the first lease.

[3] The changes consist of deleting the words "be responsible for and to relieve" and "relieves" and substituting the words "release" and "releases" in their stead in ink.

Supplee, 1 Rawle 131. See annotations and collected cases in 28 A. L. R. 1448, 1464 and 28 A. L. R. 2d 446, 463. Defendants bring forward the Act of June 12, 1878, P. L. 205, 21 PS §655, to relieve them of the grantor's covenant to repair, but I see no such intendment in that act. The act relieves grantees of personal liability for *payment* of ground rents, mortgages or other encumbrances, unless personal liability be expressly assumed, but does not relieve them of a covenant to repair.

Defendants suggest that since there was a conveyance of the property by the lessor but not an actual assignment of the lease, they as grantees are not liable on the covenant to repair. But the transfer of the reversion is an "assignment of the lease" without more; as to actual assignment this expression ought to be confined to transfer of the lease by the lessee and not by the lessor. See 32 Am. Jur. 101, Landlord and Tenant, §92. Defendants succeeded to their grantor's interest by the deeds of conveyance, and the lease provides in paragraph 27 that heirs, successors and assigns of the lessor acquire his rights and become subject to his liabilities. Grantees of the reversion are assignees of a lease: Miller v. Michael Morris, Inc., 361 Pa. 113, 118. Though the original lessor can be held to his own personal liability to the lessee upon his covenants, their burden may run with the reversion and subject the lessor's transferees to liability to be sued thereon for breaches after the transfer: 32 Am. Jur. 103, Landlord and Tenant, §96. I find that defendants, as grantees of the reversion are bound by the provisions of the typewritten paragraph (no. 31), and therefore subject to a covenant to keep the roof in repair.

Defendants, under the lease provision, must however be given notice in writing of any defective condi-

tion of the roof and have a reasonable time to make the repairs after such notice. Plaintiff sent written notices to the rental agents for the property on May 31, 1946, April 18, 1947, May 2, 1947 and June 11, 1947, complaining about the defective roof condition and leakage after rain. The first notice was during the original lessor's ownership of the property but the latter three were given during defendants' ownership. (The rental agents remained the same after the transfer of the property). Under the covenant, defendants were entitled to notice (being out of possession they would not know of newly arisen defective conditions), but they did receive proper notice of the leaking roof. Defendants did send a workman around and efforts to repair were made, but the repairs were inadequate patching jobs and afterwards the roof leaked as badly or worse than before. Defendants tried to blame the trouble on the fact that boys climbed on the roof to retrieve balls, but I did not find this contention persuasive. Defendants eventually put on an entire new roof and apparently this was the only adequate answer to the situation.

Plaintiff is persuasive of a covenant to keep the roof in repair, binding on defendants as transferees of the reversion, and a breach of that covenant. But the problems of the proper measure and the amount of the damages for that breach offer more difficulty. Ordinarily the lessor is liable for the difference in rental value of the premises kept in the condition required by the covenant and the rental value in the condition they actually were: Gorman v. Miller, 27 Pa. Superior Ct. 62. Where the tenant has the right to make the repairs and does make them upon the landlord's failure to do so, and the tenant sustains no other damage, the measure may be the cost of the repairs: McDanel v. Mack Realty Co., 315 Pa. 174, 177-78; Leon Gabai, Inc. v. Krakovitz,

98 Pa. Superior Ct. 150, 155-56. See annotations in 28 A. L. R. 1448, 1494; 28 A. L. R. 2d 446, 480. But the landlord is also liable for damage to the tenant's goods resulting from the breach of the covenant: Leon Gabai, Inc., v. Krakovitz, 98 Pa. Superior Ct. 150, 154, et seq. Here, damage to plaintiff's wool resulted from breach of defendants' covenant to repair the roof and thus they are liable for the loss.

The case of Forrest v. Buchanan, 203 Pa. 454, where a nonsuit was entered in an action in assumpsit to recover damages for breach of a repair-covenant in a lease, is different. There, damage from a leaking roof was claimed, but plaintiff failed to show inadequate repairs or any actual loss. There was a showing of "considerable inconvenience and discomfort at times of rain" but no pecuniary damage.

However, plaintiff in this case, as to destroyed wool, was not sufficient in its proof of values. It was testified that a considerable quantity of stored wool (5,297 pounds) was entirely decomposed and had to be discarded; that other wools (11,157 pounds) were discolored which resulted in partial loss. Plaintiff concedes the measure of damages as to the destroyed wool to be its market value at the time of the loss. No such proof was adduced; figures were submitted showing the cost to plaintiff. Plaintiff contends this figure is less than market value and that defendants therefore have no cause for complaint. But there is no proof that it was in fact less than market value, and it was admitted there are quotations on a commodities market available enough to supply the requisite market value of the destroyed wool. Also, plaintiff's figure for the decomposed wool ($8,062.05), included customs duties which had been paid but which could have been recovered from the Government upon proof of the loss. Plaintiff did not take the trouble to recover the duties,

and, though precise figures are not available, it appears to have been a substantial item.

Though a plaintiff who has suffered damage should not be deprived of all relief because he cannot establish the amount with the preciseness of mathematical certainty (Betterman v. American Stores Company, 367 Pa. 193, 207; Friedman v. Parkway Baking Company, 147 Pa. Superior Ct. 552), here an accurate standard was within plaintiff's ability to supply. The uncertainty as to the amount of damage arises not from the nature of the loss but from the neglect or omission of plaintiff to bring in the available evidence. In the state of proof as it is, I cannot allow recovery for the decomposed wool.

The nature of the proofs as to the discolored wool do bear the test of adequacy for here the situation itself precluded mathematical preciseness. An approximation for which a reasonably fair basis is afforded should therefore be accepted. Plaintiff's witness, who was familiar with wool purchases, estimated that the discolored wool suffered about a 30 percent depreciation in value; that this wool was blended with other wools and eventually sold. The damage figure given as to this wool was $1,564.30. The question of return of customs duties does not arise with respect to this wool. The proof of the partial discoloration and the estimate of the partial loss had sufficient support in the evidence to warrant a finding in plaintiff's favor as to this item.

Plaintiff also claimed as damages the amount it spent on skinning and relocating the wool so as to separate spoiled from unspoiled portions and thus prevent even greater loss. Since this sum ($669.37) was spent to mitigate the damage (which was plaintiff's duty) and thus served to reduce the amount for which defendants could be held liable, it is a proper item of damages.

Plaintiff seeks a further sum because a portion of the floor space of the warehouse was rendered unusable for a time as a result of the rain leakage. This claim was for 10 percent of the rent paid for a period of eight and one-half months. In effect, plaintiff is claiming a partial eviction. Where the circumstances of a landlord's failure to repair, or negligent repair, constitute an eviction, the effect is to suspend the payment of the rent: Chelten Ave. Bldg. Corp. v. Mayer, 316 Pa. 228; Minster v. Pennsylvania Co., etc., 104 Pa. Superior Ct. 301; Adler v. Sklaroff, 154 Pa. Superior Ct. 444.

As stated above, the usual rule for assessing the tenant's damage arising from the landlord's failure to repair is the difference between the rental value of the premises in the condition in which they were required to be kept and their actual condition. Here there was no total eviction so ordinarily the measure would be difference in rental value rather than suspension of the rent. There is however a provision in the lease (paragraph 12b) that where a part of the building becomes untenantable there shall be an apportionment of the rent. The measure based on rent apportionment according to unusable space is not quite the same as that of difference in rental values but could yield a virtually similar result.

The duration of partial deprivation of the warehouse space was not sufficiently proven by plaintiff. It claimed for eight and one-half months, one and one-half under the first lease and seven months under the second. But it does not appear that the condition actually lasted that long. Admittedly the premises remained substantially usable and approximately the same number of bales of wool were stored in the warehouse after the heavy rain of June 14, 1947, as before. I find the figure of $45 (10 percent of the rental for

the remaining one and one-half months under the first lease) to be a proper allowance for this item of damage.

### Finding

The trial judge hereby makes a finding in this case in favor of plaintiff, Fred Whitaker Company, against defendants, Sylvia M. Cohen and Ida S. Aukburgh, in the sum of $2,278.67.